# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| KEVIN GENE MCENTIRE, | Case No. 1:25-cv-244 |
| Plaintiff, | Hopkins, J.<br>Bowman, M.J. |
| v. | |
| JANCOA JANITORIAL SERVICES, INC., | |
| Defendant. | |

## REPORT AND RECOMMENDATION

On April 15, 2025, Plaintiff Kevin Gene McEntire moved for leave to file the above-captioned complaint in this Court *in forma pauperis*, or without payment of fees. (Doc. 1). Attached to Plaintiff's motion/application is a copy of the proposed complaint. (Doc. 1-1).

**I. General Screening Authority**

By separate Order issued this date, Plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. As a result, the complaint is now before the Court for a sua sponte review to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if satisfied that the action is frivolous or malicious. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *see also* 28 U.S.C. § 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law.

*Neitzke v. Williams*, 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327.

Congress has also authorized the sua sponte dismissal of complaints which fail to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Although a plaintiff's pro se complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotation omitted)). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915(e)(2)(B)(ii) and 1915A(b)(1)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual

allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557.

## II. Analysis of Complaint

For the reasons discussed below, the undersigned recommends sua sponte dismissal with prejudice for failure to state any plausible claim.

### A. Plaintiff's Allegations

Plaintiff's 28-page complaint is handwritten in part on the complaint form provided to pro se litigants. In his complaint, Plaintiff alleges employment discrimination in violation of Title VII of the Civil Rights Act of 1964 "off and on" between December 2023 and February 2025. (Doc. 1-1, PageID 6-7). Plaintiff identifies himself as a brown-skinned, English-speaking Christian who was "born and raised in U.S.A." (*Id*., at 7, 14-15).

Plaintiff alleges that most employees hired by Defendant are foreign-born. He alleges that he was hired to work part-time on December 13, 2023 on Defendant's "Rookwood" account. (*Id*.) Three full-time employees assigned to the same account at the time Plaintiff was hired had "moved here from some area outside U.S.A.," reportedly "from a refugee camp," and spoke a "primary language … different than English." (*Id*., PageID 15).

Plaintiff alleges that during his tenure of employment, he was subjected to ongoing "persecution/retaliation for reporting serious wrong doings at the account." (*Id.*, PageID 15). Based on the allegations, the undersigned reasonably infers that at least some of

3

Plaintiff's reports related to Plaintiff's foreign-born co-workers.(*Id*., PageID 15). Plaintiff alleges discrimination based on his "minority" status among Defendants' foreign-born employees, citing his race, color, religion and national origin (U.S.A.). (*Id.*) He also alleges discrimination based on his language (English), and alleges that his parents were also born and raised in the U.S.A. (*Id.*, PageID 14).

Plaintiff attributes the discrimination to the "system Jancoa has set up at Rookwood." (*Id.*, PageID 8). Plaintiff states that he repeatedly expressed concerns but that Defendant was "negligent of, willingly neglected, continued to neglect, [and] refused to address" those concerns. (*Id.*, PageID 9). Plaintiff complains that

> [N]one of Jancoa employees ever received any disciplinary action in any way for serious wrong doings at the account after being reported to management/company office. None with Management …report or take serious action against a close relative(s). Then there is [an] ethics problem a serious conflict of interest.

(*Id.*) Without identifying the content of his complaints, he alleges that he spoke with "Gelily Orientation Manager on 6-20-24 and again once in Aug. 2024 and a 3rd time around a few months later." (*Id.*)

He further alleges:

> On 12-31-24 I spoke with Oriana HR and Clint co-owner at company office. I mentioned [an] incident that recently happen at the account another example of example of workplace harassment, defamation of reputation and hostile work environment. Oriana HR and Clint co owner mentioned viewing their client[']s camera system which I believed they did and apparently everybody at the account viewed it as well. During this meeting and discussion Oriana Company HR blur[t]ed out [they're] from a refugee camp as if to say that's why Jancoa don't take disciplinary action against some employees.

(Doc. 1-1, PageID 10).

4

Plaintiff's complaint expresses a high level of dissatisfaction with Defendant's response to the concerns that Plaintiff expressed. According to Plaintiff,

> Jancoa documented for me the fact they feel like these concerns are primarily an issue of miscommunication due to a difference of languages between all parties involved at Rookwood. In other words, the system Jancoa has set up at Rookwood consist[s] of the "majority" which moved here from outside U.S.A. years ago primary language different than English and a client that[']s use[d] to this system for years. Then comes the "minority" born in U.S.A. primary language/English. This is why miscommunications and these concerns such as illegal discrimination, defamation of reputation, slander, harassment and trying to get away with a wrongful termination of employment happen.

(Doc. 1-1, PageID 8-9).

Plaintiff alleges that his employer's "system" of discrimination included discriminatory hiring practices.

> I believe Jancoa whether accidental or not discriminate in their hiring practice. They only have foreigners at this account on a regular basis. If born and raised in U.S.A. and your parents also, then you don[']t fit that, add brown skin color and believer in Christ then this system/not necessarily every individual but the system as a whole deliberately try to get away with illegal discrimination, [malicious] defamation of reputation, slander, harassment, and trying to get away with a wrongful termination of employment.

(Doc. 1-1, PageID 17).

On February 17, 2025, Plaintiff alleges that he reported yet another concern to someone "who is in charge of time for Jancoa." (*Id.*, PageID 11). Plaintiff includes the factual detail that the February 17 concern related to an incident he had witnessed concerning the Paycom clock system. After thanking Plaintiff for the report, the individual provided an explanation that "didn't make any sense at all." (*Id.*, PageID 10-11). The next day, on February 18, 2025, Plaintiff resigned from his employment.

> After a continuous time of being illegally discriminated against on 2-18-25 I spoke with Beonca Receptionist to inform [I] have something else moving

5

on. Receptionist said would tell HR[.] Thankfully didn't receive wrongful termination of employment.

(*Id.*, PageID 11).

In his federal lawsuit, Plaintiff seeks to hold Defendant liable for

[r]efusing to take disciplinary action against their system they had set up at the account for years. Allowed them, encouraged them, helped and caused this system to try and get away with illegal discrimination and all that make up this discrimination, workplace harassment, defamation of reputation, hostile work environment, slander and trying to get away with a wrongful termination of employment. Because of what I the minority had to endure Jancoa should be liable by the court system.

(*Id.*, PageID 11).

The complaint states that Plaintiff filed an EEOC charge when he was still employed, on November 19, 2024, and received a Notice of his Right to Sue on January 18, 2025, a month prior to his resignation.[1] (Doc. 1-1, PageID 21). Also on January 18, 2025,[2] Plaintiff alleges that he received a written explanation expressing Defendant's belief that Plaintiff's concerns primarily reflect "an issue of miscommunication" based on language differences. (Doc. 1-1, PageID 14).

### B. Plaintiff Fails to State a Plausible Employment Discrimination Claim

In recommending sua sponte dismissal, the undersigned acknowledges that it is relatively rare to recommend dismissal under §1915(e) for an employment discrimination case. Two decades ago in *Swierkiewicz v. Sorema N.A.*, 122 S.Ct. 992, 999, 534 U.S. 506, 514 (2002), the Supreme Court held that courts should refrain from conflating the evidentiary standard for proving a claim of employment discrimination with the more

---

[1]Plaintiff has included an envelope that is post-marked January 15, 2025. The face of the Notice indicates that the EEOC decision was issued on 12/30/2024. (Doc. 1-1, PageID 20, 24).
[2]It appears, but is not entirely clear from the complaint, that Defendant's documented explanation may have been its written response to the EEOC charge.

6

liberal pleading standard under Rule 8. In *Swierkiewicz*, the plaintiff alleged that he had been terminated on account of his national origin (Hungarian) and based on his age (53). A trial court dismissed his complaint because he had failed to include allegations that supported "an inference of discrimination" under the fourth prong required to prove his prima facie case. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). But the Supreme Court held that a complaint need only conform with a liberal pleading standard under Rule 8, and need not satisfy all elements of the *McDonnell Douglas* (evidentiary) standard. The *Swierkiewicz* Court held that the complaint satisfied the pleading standard because it alleged wrongful termination and contained sufficient details such as relevant dates and the ages and nationalities of at least some of the relevant persons involved with his termination. *Id.*, 122 S. Ct. at 999. As alleged, those factual details provided the defendant employer with "fair notice of what petitioner's claims are and the grounds upon which they rest." *Id.*

In *Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012), the Sixth Circuit clarified that even though *Swierkiewicz* established that a complaint alleging employment discrimination need not establish all elements of proof under *McDonnell Douglas*, such a complaint still must satisfy the "plausibility" standard set forth in *Iqbal* and *Twombly*. *See id.* at 610 (6th Cir. 2012) (holding that an employment discrimination complaint must allege "sufficient 'factual content' from which a court can 'draw the reasonable inference' that the employer 'discriminate[d] against [Keys] with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin.'") (additional citation omitted). Reviewing the complaint at issue in *Keys*,

7

the court held that it contained sufficient factual allegations that were "neither speculative nor conclusory." *Id.*

> According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

*Keys v. Humana, Inc.*, 684 F.3d at 610.

The plaintiff's complaint in *Keys* alleged discrimination in the defined categories of "hiring, compensation, promotion, discipline, and termination." *Id.* In holding that the complaint met the plausibility standard, the Sixth Circuit focused on the complaint's inclusion of allegations about "several specific events in each of those employment-action categories where Keys alleges she was treated differently than her Caucasian management counterparts; it identifies the key supervisors and other relevant persons by race and either name or company title; and it alleges that Keys and other African Americans received specific adverse employment actions notwithstanding satisfactory employment performances. " *Id.*

In contrast to the factual allegations included in the complaints in *Swierkiewicz* and *Keys,* Plaintiff's complaint here contains only conclusory statements unsupported by any facts that would provide "fair notice" to Defendant of the nature of Plaintiff's claims. In the absence of such critical factual support, Plaintiff's conclusory leaps and inferences defy plausibility. At a minimum, Plaintiff must allege *some* facts that give rise to an inference of discrimination based on his protected class. Here, however, Plaintiff's references to protected classes of race, color, and religion are entirely conclusory. For example, Plaintiff's only factual allegation with respect to race or color is the following statement:

8

"My color which is brown skin tone some may equal this with ethnic/race." (Doc. 1-1, PageID 15). Similarly, minimal allegations regarding his religion include the following:

> I received on going persecution for relig[i]ous beliefs. As Jancoa words it in a document received from them in January of 2025 which stated that I have been a model employee for Jancoa. This can only happen because of my relig[i]ous beliefs.

(Doc. 1-1, PageID 15), In short, other than self-identifying as a brown-skinned Christian, the complaint is devoid of any allegations that would suggest - much less explain - why Plaintiff believes he suffered employment discrimination based on race, color, or religion.

In contrast, it is fairly evident that Plaintiff's primary complaint relates to his alleged protected class of "national origin" as a U.S. citizen who was in the "minority" based on allegations that most coworkers were immigrants who were not native English speakers. He alleges that throughout his part-time employment, he made complaints about wrongdoing by his coworkers and/or unspecified aspects of his employer's "system" that managers ignored or did not sufficiently address. Plaintiff strongly implies that his employer did not adequately discipline his foreign-born coworkers based on their differing national origin and/or native language. And he alludes to "retaliation," which suggests to the undersigned that he might be attempting to allege reverse-discrimination based on disparate treatment. But if that is what Plaintiff is suggesting, the claim is not "plausible" because he fails to include any facts that would give the Defendant fair notice of his claim. For example, Plaintiff does not allege that *he* was disciplined based on his protected class for misconduct for which his coworkers were not disciplined. In fact, while the complaint generally alleges he was subject to "persecution/retaliation for reporting serious wrong doings at the account," (*id.*, PageID 15), Plaintiff fails to mention any adverse actions to which he was subjected at any time during his employment. The only "practice" or action

9

about which Plaintiff complains is the Defendant's failure to adequately address unspecified "concerns" to his satisfaction.[3]

Plaintiff's claims are implausible because they are overly speculative without factual support. For example, he accuses his employer of "negligence" in its practices. But the only employment practice about which Plaintiff complains is that Defendant engages in discriminatory "hiring practice[s]" by hiring mostly "foreigners." Apart from the conclusory nature of the claim, Plaintiff would not appear to have standing to bring that claim because he does not allege that Defendant failed to hire or promote *him* for any position. In similar fashion, Plaintiff includes a conclusory reference to "wrongful termination," but then alleges that he voluntarily resigned his position on February 18, 2025 and was not wrongfully terminated.

In sum, Plaintiff's "naked assertion[s] devoid of further factual enhancement" fail to meet basic pleading standards. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). The most the undersigned can infer is that Plaintiff began working for the employer and expressed various "concerns" that included some type of "ethical conflict" and/or perceived misconduct by his coworkers. On the whole, his complaint fails to provide sufficient factual detail to give the Defendant "fair notice" of his otherwise conclusory and speculative discrimination and/or retaliation claims.

Because Plaintiff's complaint fails to allege sufficient "'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the

---

[3] Aside from the February 17, 2025 incident that had something to do with a time clock, Plaintiff does not identify any details about the concerns he expressed beyond the handful of dates and identify of persons with whom he communicated.

10

reasonable inference,'" that the Defendant discriminated against Plaintiff during his employment concerning his compensation or terms and conditions of employment, because of his race, color, religion, or national origin, I recommend dismissal of Plaintiff's complaint. *Accord White v. Coventry Health and Life Ins. Co.*, 680 Fed. Appx. 410 (6th Cir. 2017) (affirming dismissal of employment discrimination complaint where allegations of discrimination were not plausible and failed to rise above the speculative level); *John v. Cuyahoga County*, 2017 WL 6344613 (N.D. Ohio Dec. 11, 2017) (dismissing employment discrimination claims under 42 U.S.C. § 2000e and 42 U.S.C. § 1981, where Plaintiff's allegations that the Defendant discriminated against him in the hiring process on the basis of his race and gender did not rise above the "speculative level," distinguishing *Swierkiewicz*).

### III. Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT** all claims contained in Plaintiff's complaint be **DISMISSED with prejudice** pursuant to 28 U.S.C. §1915(e)(2)(B).

    *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

11

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

KEVIN GENE MCENTIRE,   Case No. 1:25-cv-244

    Plaintiff,   Hopkins, J.
                              Bowman, M.J.

    v.

JANCOA JANITORIAL SERVICES, INC.,

    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).